M. C. Rhodes v. Commissioner.
Rhodes v. Commissioner
Docket No. 8846.
United States Tax Court
1947 Tax Ct. Memo LEXIS 208; 6 T.C.M. (CCH) 526; T.C.M. (RIA) 47130; May 12, 1947
*208 Held, in the taxable year petitioner and his wife were not engaged in carrying on business in a bona fide partnership which can be recognized for income tax purposes. John W. Giesecke, Esq., Title Guaranty Bldg., St. Louis 1, Mo., for the petitioner. Cecil H. Haas, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion In this case respondent determined an income tax deficiency for the calendar year 1941 in the amount of $4,743.83. The issue is whether in the taxable year a partnership existed between petitioner and his wife which should be recognized for tax purposes.
Findings of Fact Petitioner is an individual residing at Webster Groves, Missouri. Marguerite S. Rhodes is his wife. Petitioner's tax return for 1941 was filed with the collector of internal revenue for the first district of Missouri. Petitioner graduated as an engineer in 1924 from the Worcester Polytechnic Institute. He was married in 1927. At that time, he was employed as an engineer for Riley Stoker Company in Worcester, Massachusetts. In 1928 petitioner and his wife moved to St. Louis, Missouri, where petitioner was employed by a Mr. Hunter, a manufacturer's *209 agent, who sold power plant and airconditioning equipment and who there represented the Riley Stoker Company. Hunter subsequently became sales manager for the Riley Stoker Company in Worcester, and for a period of about two years petitioner managed his business for him in St. Louis. In the latter part of 1932, Hunter offered to sell the business to petitioner for $750 and, after some negotiations, petitioner accepted the offer, taking over some accounts and office fixtures and furniture. Thereafter, the business was conducted under the name of Rhodes Equipment Company. At that time, petitioner had no funds and, after unsuccessful attempts to borrow money from relatives, Mrs. Rhodes wrote to a Mr. Kinney in Worcester and was successful in obtaining a thousand dollars from him. Mr. Kinney was an old family friend who had known petitioner since childhood and had known Mrs. Rhodes since her marriage to petitioner. Petitioner deposited the thousand dollars in a bank account in the name of Rhodes Equipment Company, on which both he and his wife were authorized to draw checks. Petitioner and Mrs. Rhodes expected to repay the thousand dollars, and the money was entered in the original *210 cash book of Rhodes Equipment Company as a loan to the business from H. E. Kinney. Petitioner later made repayment to or on behalf-of Kinney in excess of the thousand dollars. The $750 consideration for the purchase of the business was later paid by petitioner to Hunter from commissions on the sale of parts. Petitioner originally had his office at his house in order to save operating expenses. Representatives of the Riley Stoker Company and Allen-Sherman-Hoff Company called on petitioner there, at which time Mrs. Rhodes was also present. These two concerns entered into written contracts appointing Rhodes Equipment Company as their agent. Subsequently, oral agreements were obtained to represent other manufacturers. Petitioner and Mrs. Rhodes at that time had two small children. A third was born in January 1933, and a fourth in the spring of 1941. During the first two years while the office was at the home, petitioner spent most of his time out making contacts and doing sales work. Mrs. Rhodes answered the telephone and did some typing and filing. Prior to her marriage, she had been employed by Butler Brothers in Minneapolis for a short time as a file clerk. An outside girl was *211 hired to do secretarial work. In October 1934 the office was moved from the house to downtown St. Louis, and Mrs. Rhodes thereafter rendered occasional services in the evenings, sometimes substituted for an office girl who might be ill, assisted petitioner in entertaining business people in their home and discussed business problems with petitioner. The business was not very profitable during the first three or four years, but from 1937 through 1940 net profit averages between $15,000 and $20,000 a year. Every year most of the net profit was withdrawn and little was left by petitioner for use in the business. The business income was of three different kinds. First, there were commissions, ranging from 5 to 15 per cent, derived from the sales of equipment for various manufacturers. In such cases, shipments were made direct from the manufacturer to the purchaser and the price was paid direct to the manufacturer. In turn, the manufacturer remitted the commission to petitioner. This type of business produced the largest amount of income. Second, in instances where the installation cost was greater than the cost of the equipment, petitioner made direct contracts with the customers *212 for the complete installation and furnished whatever materials and labor were necessary. Third, there were commissions on spare parts sold. Customers to whom equipment had previously been sold would order parts as needed direct from the manufacturer, and commissions would be paid petitioner on such orders. Petitioner carried no inventories of equipment or spare parts. From 1934 through 1940 all the net income of the business was reported by petitioner in his individual returns. No partnership return was filed for Rhodes Equipment Company for any year prior to 1941, and Mrs. Rhodes filed no individual return prior to 1941. Some time in January 1941, petitioner and Mrs. Rhodes executed written articles of partnership as of January 2, 1941, which recited that the parties for the past 12 years had been engaged in the sale, distribution and installation of boilers, stokers, airconditioning, heating and power equipment and provided that the business should be carried on as before; that the partnership should commence January 1, 1941, and continue for a term of 5 years, and thereafter from year to year unless terminated by either party; that it was understood that each party had a half *213 interest in the capital of the business; that petitioner should have charge of the financial and business management of the firm; and that half the net profits of the business should be paid petitioner for his management services and the rest divided equally between petitioner and his wife. After the execution of the articles of partnership little, if any, change was made in the conduct or operation of the business. During the year 1941, Mrs. Rhodes went to the office on the average of about two evenings a week to do left-over filing and to sign checks in petitioner's absence. Accountants employed to open a formal set of books set up separate capital accounts for petitioner and Mrs. Rhodes as of January 1, 1941. The accountants found that the net worth of the business as of that time was $3,269.36, and they divided this amount equally between the two capital accounts. Twenty-five per cent of the net profits for 1941 and 1942 were credited to Mrs. Rhodes' capital account, and the account shows no withdrawals prior to 1943. Shortly after the business started in 1932, petitioner and his wife opened a joint bank account, and from time to time moneys were transferred from the business *214 bank account to the joint account. Both petitioner and Mrs. Rhodes were authorized to sign checks on either account. Sometimes during petitioner's absence Mrs. Rhodes would go to the office to sign checks on the business bank account. Moneys withdrawn by Mrs. Rhodes from the joint account were used for household and family expenses and to make investments in the joint names of petitioner and herself. Petitioner and Mrs. Rhodes held title to their home jointly or by the entireties, and in December 1941 they purchased a second parcel of improved real property as an investment in their joint names. During 1941 two commission salesmen were employed by Rhodes Equipment Company, and some five engineers were employed to assist in the installation work. One of the commission salesmen had been with petitioner almost from the beginning of the business. Occasionally it was necessary to borrow money in connection with the installation work. In 1941 a total of $3,000 was borrowed. Commissions received in 1941 on parts sales and on original sales of equipment made by petitioner and the two salesmen amounted to a little over $70,000. Gross receipts on installation contracts during the year *215 were approximately $47,000, and costs of labor and materials in connection with such contracts completed during the year were approximately $36,000. For the first time a partnership return of income was filed for Rhodes Equipment Company for the year 1941, the return showing a net income of $36,437.59. Petitioner reported 75 per cent of that amount in his individual return, and Mrs. Rhodes reported the remaining 25 per cent in her individual return. The respondent has held that all of the net income of Rhodes Equipment Company is taxable to the petitioner. In the taxable year petitioner and his wife were not engaged in carrying on business in a bona fide partnership which can be recognized for income tax purposes. Opinion ARUNDELL, Judge: While we have only the year 1941 before us, petitioner has attempted to demonstrate that a partnership existed between his wife and himself from the beginning of the business in 1932. He contends that the $1,000 obtained from Kinney was a gift to Mrs. Rhodes and represented a contribution to capital on her part. It appears, however, that neither petitioner nor Mrs. Rhodes treated the money as a gift at that time. Both testified that they *216 expected it to be repaid. The money was entered on the books of the business as a loan from Kinney and, in fact, Kinney was later repaid more than that amount. In these circumstances, we cannot agree with petitioner that his wife made a contribution of capital originating with her. We are likewise unable to conclude from the evidence that from the beginning of the business in 1932 there was any definite oral agreement between petitioner and his wife to carry on business in partnership. Certainly the actions of the parties during the intervening years from 1932 to 1941 were not consistent with the existence of a partnership. When asked what prompted the execution of the written partnership agreement in 1941, petitioner testified that he had been reading a Tax Service and newspaper and magazine articles about partnerships and decided that he had been paying double taxes long enough. Petitioner's attorney drafted the agreement for him, and Mrs. Rhodes signed it without having had any discussions with the attorney. Petitioner also relies on the rendition of services by Mrs. Rhodes to sustain the alleged partnership. It is true that while the office was at their home from 1932 to 1934 *217 Mrs. Rhodes answered the telephone while petitioner was away and did some typing and filing. She also assisted petitioner in entertaining business people in their home, and it appears that after the office was moved from the house Mrs. Rhodes went down occasionally in the evenings and signed checks or did some left-over filing. These services, however, are of a minor character and certainly connot be considered those vital services which a partner would be expected to render. No change was made in the manner of operation of the business after the execution of the written partnership agreement in 1941. Petitioner continued to manage the business as before. While some capital was used in the business in connection with the installation work, we are unable to find that any of it originated with Mrs. Rhodes. By far the greater portion of the business income was derived from commissions. We think that the 1941 agreement amounts to nothing more than a family arrangement designed to divide petitioner's income for tax purposes, and we do not believe that petitioner and his wife really and truly intended to carry on business in partnership. Under the principles of , *218 and , we hold that the respondent did not err in taxing all the business income to the petitioner. Decision will be entered for the respondent.